UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

JAMES R. TROLICE,
LEE P. VACCARO, and
PATRICK G. MACKARONIS,

Defendants.

2:16-cv-02513-WJM-MF

## CONSENT OF DEFENDANT LEE P. VACCARO

1.      Defendant Lee P. Vaccaro ("Defendant") acknowledges having been served with the Complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the Complaint in this action.  Specifically, in *United States v. Vaccaro*, Crim. No. 16-254 (D.N.J.), Defendant pleaded guilty to one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Vaccaro*.

3.      Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things,

permanently restrains and enjoins Defendant from violating Sections 5(a) and 5(c) of the

Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)]; Section 15(a) of the

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)]; Section 17(a) of the

Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1) and 206(2) of the

Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and (2)].

4.      Defendant agrees that the Court shall order disgorgement of ill-gotten gains,

prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act

[15 U.S.C. § 77t(d)], Section § 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and

Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].  Defendant further agrees that the

amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of

the Commission, and that prejudgment interest shall be calculated from the dates of the

violations set out in the Complaint, based on the rate of interest used by the Internal Revenue

Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

Defendant further agrees that in connection with the Commission's motion for disgorgement

and/or civil penalties, and at any hearing held on such a motion:  (a) Defendant will be precluded

from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b)

Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the

purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true

by the Court; and (d) the Court may determine the issues raised in the motion on the basis of

affidavits, declarations, excerpts of sworn deposition or investigative testimony, and

documentary evidence, without regard to the standards for summary judgment contained in Rule

56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for

disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

5.      Defendant agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.  Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

8.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

9.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

10.     Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11.     Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

12.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

13.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and:  (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket.  Nothing in this paragraph affects

Defendant's:  (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

15.     Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

16.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.


Dated: _9/12/16_                            _____
                                                        Lee P. Vaccaro

On _Sep 13th_, 2016, _Leo Vaccaro_, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

                                            _____
                                            Notary Public
                                            Commission expires:


Approved as to form:


_____

Robert C. Scrivo
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
(973) 425-8729
Attorney for Defendant

NAIMA ASLAM
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 3-1-2020
Certificate No: 16-1761-1

16.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Dated:    9/12/16                          _Lee P. Vaccaro_____
                                           Lee P. Vaccaro

On _____, 2016, _____, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

                                           _____
                                           Notary Public
                                           Commission expires:

Approved as to form:

Robert C. Scrivo
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
(973) 425-8729
Attorney for Defendant

# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CRIMINAL NO 16-CR-254(WJM)


UNITED STATES OF AMERICA,

       V.                             TRANSCRIPT OF
                                     (PROCEEDINGS)
LEE VACCARO,

       DEFENDANT.
------------------------------

                            Newark, New Jersey
                            Date: June 2, 2016


B E F O R E:   HONORABLE WILLIAM J. MARTINI,
               UNITED STATES SENIOR JUDGE


A P P E A R A N C E S:

    DANIEL SHAPIRO, ESQ
    (Assistant United States Attorney)
    For the Government


    ROBERT C. SCRIVO, ESQ
    (McElroy, Deutsch, Mulvaney & Carpenter, LLP)
    For the Defendant



_____
  Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record as
taken stenographically in the above-entitled proceedings.


                 S/Yvonne Davion
                 Yvonne Davion, CCR
                 Official Court Reporter

2

1              THE COURT:  This is the matter of United States

2      versus Lee Vaccaro.

3              Can I have appearances of Counsel?

4              MR. SHAPIRO:  Good morning.  Assistant United

5      States Attorney Daniel Shapiro for the government.  Good

6      morning.

7              MR. SCRIVO:  Good morning.  Robert Scrivo; McElroy

8      for Morristown for Mr. Vaccaro who is to my right.

9              THE COURT:  Nice to see you.  I understand Mr.

10      Vaccaro is here in offer of plea of guilty to an information.

11      Is that correct?

12              MR. SCRIVO:  That is correct, Judge.

13              THE COURT:  Can we have him sworn, please?

14      L E E  V A C C A R R O, sworn.

15      EXAMINATION BY THE COURT:

16         Q.   Mr. Vaccaro, if you could just keep your voice up and

17      speak into the microphone, please.  That's fine.

18         A.   Yes, sir.

19         Q.   That's good.

20         A.   How old are you, sir?

21         A.   Forty four.

22         Q.   And you understand and speak English?

23         A.   I do.

24         Q.   Do you have any medical or psychiatric condition which

25      would interfere with your understanding me?

3

```
 1          A.   I do not, your Honor.

 2          Q.   Have you taken any medications or alcohol or drugs in

 3     the last 24 hours to the extent it would interfere with your

 4     understanding me?

 5          A.   No, sir.

 6          Q.   All right.  You have an attorney Mr. Scrivo.

 7               Are you satisfied with his services?

 8          A.   Yes, sir, I am.

 9          Q.   And has he provided you with what's called the

10     Information which is the docket which sets forth the criminal

11     charge against you?

12          A.   Yes, sir.

13               THE COURT:  And that consists of two counts,

14     correct, Mr. Shapiro?

15               MR. SHAPIRO:  Yes, your Honor.

16               THE COURT:  All right.

17          Q.   Did he go over each of those charges with you, Count 1

18     and Count 2?

19          A.   Yes, your Honor.

20          Q.   Do you understand that these are felony charges?  Which

21     means that under the law, instead of pleading guilty here

22     today, you would have the right to have these matters referred

23     to what's called the federal Grand Jury which is a group of

24     citizens that would listen to evidence presented by the

25     government alone.  And they would determine whether or not
```

4

1        there is enough evidence to charge you.

2                Do you understand that?

3        A.   Yes, I do.

4        Q.   By pleading guilty you are giving up that right to be

5        reviewed by the Grand Jury.  What it means, on a rare occasion

6        the Grand Jury may say to the government, we don't think you

7        have enough evidence.  We're not going to return a charge

8        against this person at this time.

9                Do you understand that?

10       A.   Yes, sir.

11       Q.   So, by pleading guilty you are giving up that right.

12               Do you understand that?

13       A.   Yes, your Honor.

14       Q.   Have you discussed it with your lawyer?

15       A.   I have, your Honor.

16       Q.   Are you giving up that right voluntarily, without

17       anybody forcing you to do that?

18       A.   I am, your Honor.

19       Q.   There's a waiver of indictment form.

20               THE COURT:   Counsel, do you have that and the plea

21       agreement?

22       Q.   Mr. Vaccaro, did you go over that form with your

23       lawyer?

24       A.   I did and I signed it.

25       Q.   Did you sign it?

1       A.  Yes, your Honor.

2       Q.  Did you sign it voluntarily?

3       A.  I did.

4       Q.  Do you know by signing that, you are indicating to the

5    Court that you understand the right and you are giving it up

6    voluntarily.

7          Is that true?

8       A.  I do.

9          THE COURT:  Mr. Scrivo, did you witness him sign

10   it?

11         MR. SCRIVO:  I did.

12         THE COURT:  Can you hand it up, please, and I will

13   sign it.

14         I am satisfied that the defendant's made a knowing

15   and voluntary waiver of his right to have the matter referred

16   to the Grand Jury.  And I will sign the waiver of indictment

17   form and file it with the Court Clerk.  Okay.

18       Q.  The Information charges as follows:  It charges that in

19   or about 2009 to in or about 2015 in New Jersey you did

20   knowingly and willfully combine, conspire and confederate and

21   agree with co-conspirator number 1 and others to create

22   offenses against the United States, namely securities fraud by

23   using and employing through the direct and indirect use of

24   means and instrumentalities of interstate commerce and the

25   mails, manipulative and deceptive devices and contrivances,

6

1    contrary to Title 17 section 24.1(B)5, Rule 10(B)5 it's

2    referred to, in connection with the purchase and sale of

3    securities by employing devices and schemes to defraud members

4    of the investing public.

5           Two, by making untrue statements of material facts and

6    omitting to state material facts necessary in order to make the

7    statements made in the light of the circumstances under which

8    they were made, not misleading.

9           And three, engaging in acts and practices in the course

10   of business which operated and would operate as engaging in

11   acts and practices in the course of business which operated and

12   would operate as a fraud and deceit upon investors.  Namely, by

13   participating in a scheme to defraud investors seeking to

14   purchase interest and wanting to purchase the stock of eAgency

15   contrary to our federal law.  That's Count 1.

16          And Count 2 charges that from on or about 2009 through

17   2015 in Jersey and elsewhere you did knowingly and willfully

18   directly and indirectly by use of means and instrumentalities

19   in interstate commerce in the mails used and caused to be used

20   manipulated and deceptive devices and contrivances, again

21   contrary to section Rule 10(B)5 in connection with the purchase

22   and sale of securities by employing devices, schemes and

23   artifices to defraud members of the investing public by making

24   untrue statements of material fact.

25          And C, engaging in acts, practices in the course of

1    business which operated and would operate as a fraud upon

2    investors, again contrary to our federal laws.

3         Now, if I accept your plea of guilty to these two

4    counts, you are faced with a penalty of up to five years in

5    prison on each count.  Well, no, on Count 1, a penalty of up to

6    five years in prison.  That's a conspiracy charge.  And a fine

7    of up to around $250,000.

8         Do you understand that?

9    A.   Yes, your Honor.

10   Q.   Also on Count 2 of the information you're faced with a

11   penalty of up to 20 years in prison and a fine of up to or

12   around $5 million.

13        Do you understand that?

14   A.   Yes, your Honor.

15   Q.   Now, you also have to pay a hundred dollars' assessment

16   to the Court on each of those counts.  And I will have to order

17   that you pay restitution to any victims of the offense.  Also

18   the Court may impose what's call a term of supervised release

19   of not more than three years which would begin at the

20   expiration of any terms of imprisonment you may have to serve.

21        Do you understand that?

22   A.   Yes, your Honor.

23   Q.   You should also understand if you violate any of the

24   terms and conditions of supervised release, in all likelihood

25   you will either have to serve more time in jail, more time on

8

1    supervised release, or, both.

2              Do you understand that?

3         A.   Yes, your Honor.

4         Q.   You should also understand there's no parole in the

5    federal system.  Which means that if I do impose a custodial

6    sentence, you will actually have to serve 85 to 90 percent of

7    that custodial sentence in a prison facility.

8              Do you understand that?

9         A.   Yes, your Honor.

10        Q.   Now, are you a citizen of the United States?

11        A.   I am, your Honor.

12        Q.   Okay.  You should also understand that by pleading

13   guilty, you are giving up certain rights that you have as a

14   defendant charged with a federal felony charge.

15             Most importantly, you are giving up your right to

16   what's called a jury trial, which is a procedure in a courtroom

17   like this in which you are presumed to be innocent.  And the

18   government would have to prove to 12 citizens unanimously that

19   you're guilty of this offense beyond a reasonable doubt.

20             Do you understand that?

21        A.   I do.

22        Q.   And the burden is on the government to prove that

23   against you.  You have no duty, as a person presumed to be

24   innocent, to present any defense or to testify in your own

25   behalf.

1           Do you understand that?

2      A.   Yes, your Honor.

3      Q.   If you choose to remain silent, the jury is not

4  permitted to infer any wrongdoing or guilt against you for

5  that.

6           Do you understand that?

7      A.   Yes.

8      Q.   And I would charge them accordingly if you wish me to.

9           Do you understand that?

10     A.   Yes.

11     Q.   Also you should understand at such a jury trial you

12  would have the right to have a lawyer.  And if you couldn't

13  afford a lawyer, I would appoint one for you at no charge to

14  you.

15          Do you understand that?

16     A.   Yes, your Honor.

17     Q.   These are all rights you are giving up by pleading

18  guilty today.

19          Do you understand that?

20     A.   I do, your Honor.

21     Q.   Have you discussed them with your lawyer?

22     A.   I have, your Honor.

23     Q.   Are you giving them up knowingly and voluntarily,

24  without anybody forcing you to do that?

25     A.   I am.

1      Q.   Okay.   There's also I see a plea agreement dated

2    April 27, 2016.

3           Is that your signature on page 7 of that agreement?

4      A.   Yes, your Honor.

5      Q.   And did you sign it on April 28, 2016 after you read it

6    over and you discussed it with your lawyer and he answered any

7    questions you may have had about that?

8      A.   Yes, your Honor.

9      Q.   And did you sign it voluntarily without anybody forcing

10   you to do that?

11     A.   Yes, your Honor.

12     Q.   Now, you should understand this is a full and complete

13   agreement between you and the government.

14          What that means is if someone promises you something

15   that's not in this agreement, it's of no binding effect on

16   either you or the government.

17          Do you understand that?

18     A.   Yes, your Honor.

19     Q.   You should also understand when it comes to the

20   sentence to be imposed, that's my responsibility as the Judge.

21   And while we have what's called Sentencing Guidelines that I

22   look to for guidance, they are not mandatory.   They are

23   advisory.

24          And I could, if I thought it was a reasonable sentence,

25   impose a sentence up to the maximum I just explained to you a

1     few moments ago.

2              Do you understand that?

3       A.   Yes, your Honor.

4       Q.   Also I see in this plea agreement on page 8 what's

5     referred to as Schedule A.  You and the government have agreed

6     on certain stipulations.  What that means is those are

7     agreements between you and the government.  They are not

8     binding on me, although most of the time I will agree with

9     them.

10             But, if I were to make a finding that's contrary to

11    something that you stipulated to with the government, you would

12    not have the right to withdraw your guilty plea.

13             Do you understand that?

14      A.   Yes, your Honor.

15      Q.   All right.  Also in paragraphs 12 and 13 of the

16    Schedule A, you're limiting what's called your right to appeal.

17    What that means is after I sentence you, under the law, you

18    would have the right to appeal my sentence to a higher court

19    for review and consideration.

20             Do you understand that?

21      A.   Yes, your Honor.

22      Q.   By the language in those two paragraphs, you're

23    restricting that right as per the language in those two

24    paragraphs.

25             Do you understand that?

1      A.   Yes, your Honor.

2      Q.   Did you go over that with your lawyer before you agreed

3  to it?

4      A.   I did, your Honor.

5      Q.   And are you agreeing to that voluntarily as well

6  without anybody forcing you to do that?

7      A.   I am.

8      Q.   There's a Form 11 questionnaire which your lawyer is

9  showing you right now.

10          Is that your signature on that form?

11              MR. SCRIVO:  He's going to sign it right now,

12  Judge.

13              THE COURT:  All right.

14     Q.   Are those truthful, accurate and complete answers to

15  those questions on the Form 11?

16     A.   Yes, your Honor.

17     Q.   You just signed it.  Are you signing it voluntarily

18  today?

19     A.   I am.

20     Q.   Do you understand by signing it, you are representing

21  that they are indeed your truthful, complete and accurate

22  answers to those questions.

23          Is that correct?

24     A.   Yes, your Honor.

25     Q.   Now, in order for me to accept the guilty plea, I need

1          to know what you did that makes you guilty of that offense.

2                    Please listen to the questions that will be asked by

3          the Assistant United States Attorney Mr. Shapiro.  And

4          depending on your answers, I will determine if I could accept

5          your plea.  Okay?

6               A.   Yes, your Honor.

7          EXAMINATION BY MR. SHAPIRO:

8               Q.   Mr. Vaccaro, were you the chief marketing officer and

9          vice-president of investor relations for eAgency from in or

10         about July 2009 through in or about October 2013?

11              A.   Yes, sir.

12              Q.   Were you also the founder of Vaccaro Consultants,

13         Vaccaro Consultant and Vacarro with one C Consultants?

14              A.   Yes, sir.

15              Q.   From in or about 2009 to in or about 2015, did you

16         conspire with the individual referred to as co-conspirator

17         number 1 in the Information to defraud investors seeking to

18         purchase interest in warrants to purchase the stock of the

19         agency?

20              A.   Yes, sir.

21              Q.   Was the purpose of this conspiracy to enrich yourselves

22         by soliciting investors to give you money purportedly to invest

23         in the eAgency based on material misrepresentations?

24              A.   Yes, sir.

25              Q.   Was it part of the conspiracy that from in or about

1    2009 to in or about 2015, you and co-conspirator number 1 sold

2    investors interest in companies you controlled which are

3    referred to here as the investment companies?

4    A.   Yes, sir.

5    Q.   Was it further part of the conspiracy that you and

6    co-conspirator number 1 falsely represented to investors that

7    the investment companies held a certain number of warrants in

8    the eAgency stock?

9    A.   Yes, sir.

10   Q.   Was it further part of the conspiracy that to solicit

11   investors for the investment companies, you and co-conspirator

12   number 1 made oral and written misrepresentations concerning

13   the existence number, validity and term of eAgency warrants

14   purportedly owned by the investment companies?

15   A.   Yes, sir.

16   Q.   Was it further part of the conspiracy that

17   co-conspirator number 1 made misrepresentations to investors

18   about the amount of money co-conspirator number 1 had

19   personally invested in the agency?  The amount of money

20   co-conspirator number 1 had raised for eAgency?  And

21   co-conspirator number 1's current position at eAgency?

22   A.   Yes, sir.

23   Q.   Was it further part of the conspiracy that you and

24   co-conspirator number 1 created and showed to investors

25   numerous forged documents purporting to reflect the issuance of

1        warrants to entities controlled by you and the transfer of

2        those warrants to, among others, a company controlled by

3        co-conspirator number 1?

4            A.   Yes, sir.

5            Q.   In reality, was it the case that most of the eAgency

6        warrants purportedly transferred by you to co-conspirator

7        number 1's company had never been issued?

8            A.   Yes, sir.

9            Q.   Was it further part of the conspiracy that beginning in

10       or around January 2011, the dollar amount of interest you and

11       co-conspirator number 1 sold in the investment companies began

12       to surpass the dollar amount of valid warrants held by the

13       investment companies?

14           A.   Yes, sir.

15           Q.   Was it further part of the conspiracy that when this

16       occurred, neither you nor co-conspirator number 1 disclosed to

17       investors the risk that their investment would be diluted by

18       the sale of additional interests in the investment companies?

19           A.   Yes, sir.

20           Q.   Was it further part of the conspiracy that you and

21       co-conspirator number 1 defrauded investors of more than $5

22       million in this manner?

23           A.   Yes, sir.

24           Q.   On or about April 7, 2010, did you send a wire transfer

25       of approximately $100,000 to co-conspirator number 1's bank

1      account in New Jersey representing a portion of the proceeds

2      from defrauding the individual identified as victim number 1 in

3      the information?

4           A.   Yes, sir.

5           Q.   Are you pleading guilty because you are, in fact,

6      guilty of the offenses charged in the information?

7           A.   Yes, sir.

8                     MR. SHAPIRO:   Your Honor, the United States

9      represents that had this matter proceeded to trial, the

10     government would be prepared to prove all of the essential

11     elements of counts 1 and 2 of the Information to a jury beyond

12     a reasonable doubt.

13                    And that based on this representation and the

14     defendant's answers to the foregoing questions, we believe

15     there is a sufficient factual basis to accept the guilty plea.

16                    THE COURT:   All right.   Thank you, Mr. Shapiro.

17     EXAMINATION BY THE COURT:

18          Q.   Mr. Vaccaro, how do you plead to count 1 of the

19     Information?   Guilty or not guilty?

20          A.   Guilty.

21          Q.   How do you plead to count 2 of the Information?

22          A.   Guilty, your Honor.

23          Q.   Based upon your **sworn** answers here in open court, **as**

24     well as your sworn answers **in** the Form 11 questionnaire, it's

25     the finding of the Court in **the case** of United States versus

1    Lee Vaccaro, that the defendant is fully competent and capable

2    of entering an informed plea.

3          That the defendant is aware of the nature of the

4    charges and the consequences of the plea.  And that the plea of

5    guilty is a knowing and voluntary plea supported by an

6    independent basis in fact containing each of the essential

7    elements of the offenses.  The plea is, therefore, accepted and

8    the defendant is now adjudged guilty of that offense.

9          Do we have a sentencing date?

10          THE CLERK:  September 13th at 11 a.m.

11          THE COURT:  All right.  Also I have before me a

12    consent judgment and order of forfeiture which the defendant

13    has signed and the government has signed as well.

14    Q.    You understand what this is, Mr. Vaccaro?

15    A.    Yes, your Honor.

16    Q.    It's basically you're agreeing to enter a judgment

17    against you in favor of the United States in the amount of

18    $5,437,691.85.

19          Is that your understanding.

20    A.    That is my understanding, your Honor.

21          THE COURT:  All right.  I will sign it and date it

22    June 2nd and file it with the Court.  All right.

23          Conditions of release are continued without

24    objection, Mr. Shapiro?

25          MR. SHAPIRO:  Yes, your Honor.

18

```
1                    THE COURT:  Thank you.
2                    (Whereupon the matter was concluded)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```